1
2
3
4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

5
6

TIMOTHY MOOSE

No. 2:15-cv-3022-FVS

7
8

Plaintiff,

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

9

vs.

10

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

11

Defendant.

12        BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No 12, 14.)

13    Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney Leisa Wolf

14    represents defendant. After reviewing the administrative record and briefs filed by the parties, the

15    court **GRANTS** defendant's Motion for Summary Judgment (**ECF No. 14**) and **DENIES**

16    plaintiff's Motion for Summary Judgment. (**ECF No. 12**.)

17                                **JURISDICTION**

18

19        Plaintiff Timothy Moose (plaintiff) protectively filed for supplemental security income

20    (SSI) on October 6, 2011. (Tr. 39, 268.) Plaintiff alleged an onset date of July 1, 2011.[1] (Tr. 268.)

21    Benefits were denied initially and on reconsideration. (Tr. 104, 113.) Plaintiff requested a hearing

22    before an administrative law judge (ALJ), which was held before ALJ M.J. Adams on October 8,

23    2013. (Tr. 37-75.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 40-51, 66-

24

25    ───────────────────

26    [1] Plaintiff received disability benefits as a minor for ADHD and biopolar disorder which terminated

27    on April 11, 2011 because he had turned age 18. (Tr. 99.)

70.) Vocational expert Merrill Cohen and plaintiff's grandmother, Carnie K. Beaver, also testified. (Tr. 51-66, 71-73.) The ALJ denied benefits (Tr. 20-29) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 21 years old at the time of the hearing. (Tr. 41.) He started the 12th grade but left school before graduating. (Tr. 41.) He is thinking about getting a GED. (Tr. 42.) He has never worked. (Tr. 44.) He testified he does not work because he gets frustrated with what people tell him and leaves. (Tr. 43.) He once did community service for a truck business. (Tr. 44-45.) He shoveled snow, salted ice, cleaned, and washed cars occasionally. (Tr. 44.) He spends most of his time at his friends' houses, his cousin's house, or his mom's house, although he has a trailer to sleep in at his grandmother's house. (Tr. 48.) He was expelled from school several times for disruptive behavior. (Tr. 68.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

### SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The

Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since October 6, 2011, the alleged onset date. (Tr. 22.) At step two, the ALJ found plaintiff has the following severe impairments: attention deficit hyperactivity disorder, affective disorder, and anxiety disorder. (Tr. 22.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22.) The ALJ then determined:

[C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant can understand, remember, and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work. He can make judgments on simple, work-related decisions and can respond appropriately to supervision but should not be required to work in close coordination with co-workers such as in a large, restaurant kitchen. He can deal with occasional changes in the work environment. He can perform work that requires only occasional exposure to or interaction with the general public.

(Tr. 24.) At step four, the ALJ found plaintiff has no past relevant work. (Tr. 27.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 27.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act since October 6, 2011, the date the application was filed. (Tr. 28.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts: (1) the ALJ erred by finding personality disorder is not a severe impairment; (2) the RFC determination is inconsistent with a medical opinion credited by the ALJ; (3) the ALJ erred in evaluating lay witness evidence; and (4) the ALJ erred by finding plaintiff not credible. (ECF No. 12 at 7-20.) Defendant argues: (1) the ALJ properly considered and addressed the medical evidence in assessing residual functional capacity; (2) there is no error at step two; (3) the ALJ reasonably found plaintiff not credible; and (4) the ALJ properly considered lay testimony. (ECF No. 14 at 5-20.)

**DISCUSSION**

**1.    Step Two**

Plaintiff argues the ALJ erred by finding that personality disorder is not a severe impairment. (ECF No. 12 at 7-9.) At step two of the sequential process, the ALJ must determine whether plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a).[2] Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to

---

[2]The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.1521(b); S.S.R. 85-28 at *id*.

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. §§ 404.1523, 416.923. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.*

Plaintiff argues that the ALJ gave "great weight" to multiple providers who diagnosed a personality disorder, yet failed to include personality disorder as a severe impairment. (ECF No. 12 at 7.) Indeed, the ALJ gave great weight to the opinions of Dr. Kraft, who diagnosed oppositional defiant disorder[3] (ODD) (Tr. 507); Dr. Burdge, who diagnosed personality disorder NOS with antisocial and borderline like features[4] (Tr.591); and Dr. Toews, who indicated a diagnosis of "rule out" personality disorder NOS, with immature and depressive features.[5] (Tr. 486.) Plaintiff was also treated for ADHD, bipolar I and ODD at YVFWC Behavioral Health

---

[3] Oppositional defiant disorder is noted under listing 12.08, the listing for personality disorders. (Tr. 507.)

[4] The ALJ's summary of Dr. Burdge's findings lists the other diagnoses made by Dr. Burdge but does not include personality disorder. (Tr. 25, 27, 591.)

[5] A "rule out" diagnosis means there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out. *See U.S. v. Grape*, 549 F.3d 591, 593-94 n.2 (3d Cir. 2008); *Williams v. U.S.*, 747 F. Supp. 967, 978 n.19 (S.D.N.Y 1990); *Simpson v. Comm.*, 2001 WL 213762, *7-8 (D. Or. 2001) (unpublished opinion).

Services from February 2002 to July 2010. (Tr. 364.) The ALJ did not address personality disorder or ODD at step two or otherwise discuss the diagnoses.[6] However, if an ALJ errs by not finding an impairment severe at step two, reversal may not be required if the step is resolved in the claimant's favor. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). In this case, step two was resolved in plaintiff's favor as the ALJ found plaintiff has mental health impairments. (Tr. 22.) Thus, as long as the ALJ considered limitations arising from personality disorder at the other steps of the sequential process, any error for failing to identify personality disorder as a severe impairment is harmless.[7]

---

[6] Defendant argues the ALJ's silence regarding personality disorder at step two suggests the ALJ concluded personality disorder is not a severe impairment. (ECF No. 14 at 10-11.) The court cannot assume the ALJ's intent since the issue was not discussed. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (indicating findings should be as comprehensive and analytical as feasible so that a reviewing court may know the basis for the decision).

[7] Plaintiff does not argue the ALJ's failure to include personality disorder as a severe impairment had an impact on the outcome of step three. The B criteria for listing 12.08, which was not specifically assessed by the ALJ, is the same as the B criteria for listings 12.02, 12.04, and 12.06, the listings for organic mental disorders, affective disorders, and anxiety related disorders. 20 C.F.R. Part 404, Subpt. P, App. 2. The ALJ found the B criteria for those listings was not met. (Tr. 23.) As a result, plaintiff did not meet the B criteria under listing 12.08 and therefore would not meet the listing.

Plaintiff's argument suggests the ALJ failed to take into account symptoms of personality disorder at step four in making the RFC finding. (ECF No. 12 at 7-9.) He notes listing 12.08 indicates "a personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress." [8] 20 C.F.R. Part 404, Subpt. P, App. 2 § 12.08. Plaintiff also points out that the A criteria notes symptoms such as "maladaptive patterns of behavior" associated with "pathologically inappropriate suspiciousness or hostility" and "pathological dependence, passivity, or aggressivity." *Id.* Plaintiff argues evidence of violent and threatening behavior and aggressivity in the record are symptoms of personality disorder, yet were not considered by the ALJ. (ECF No. 15 at 1.)

As discussed throughout this decision, the ALJ reasonably considered the evidence regarding plaintiff's aggressive, threatening and intimidating behavior. Notably, the ALJ discussed the findings of Dr. Burdge, one of the psychologists who diagnosed personality disorder, who indicated that "behavioral observations were inconsistent with severe mental illness." (Tr. 25, 590.) He also opined that plaintiff's mood instability might be "more characterologic." (Tr. 590.) Dr. Toews, the examining psychologist, had a challenging interview with plaintiff and found plaintiff was in no psychological distress but was immature, verbally obnoxious, verbally threatening, and non-compliant with the examination. (Tr. 481.) Dr. Toews ultimately threatened to call the police in order to end the examination, yet concluded plaintiff's noncompliance with treatment exacerbates his symptoms and affects functional abilities. (Tr. 25-26, 486.) Additionally,

---

[8] Although plaintiff does not argue he meets the criteria for listing 12.08, he points out the listings provide basic medical information relevant to the analysis. (ECF No. 15 at 1 n.1.)

after reviewing the entire record, Dr. Kraft concluded, "When motivated able to be socially appropriate." (Tr. 26, 517.) None of the psychologists who diagnosed personality disorder identified plaintiff's threatening or intimidating behavior as a functional limitation. As a result, the ALJ's consideration of those symptoms throughout the decision is reasonable.

Plaintiff also argues the ALJ's failure to find personality disorder a severe impairment at step two "taints the ALJ's entire analysis" and reflects a "general failure to consider the evidence in the record." (ECF No. 15 at 1-2.) The court disagrees. Any error in overlooking personality disorder as a diagnosis or severe impairment is harmless because the ALJ reasonably considered the evidence regarding functional limitations resulting from that diagnosis.

## 2. Credibility

Plaintiff argues the ALJ erred in finding plaintiff not credible. (ECF No. 12 at 15-20.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following

factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted).

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms plaintiff alleged, but his statements regarding the intensity, persistence, and limiting effects of those symptoms are not credible. (Tr. 24.) The ALJ gave a number of reasons for the credibility determination. (Tr. 25-26.)

First, the ALJ found the objective medical evidence is inconsistent with plaintiff's allegations of disability because it shows a history of exaggeration and benefit seeking. (Tr. 25.) Evidence of motivation to obtain social security benefits may be considered in the credibility determination. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1186 (9th Cir. 2015). The ALJ cited the consultative

examination with Dr. Toews in January 2011 which indicated plaintiff was immature, verbally obnoxious, verbally threatening, and non-compliant with the examination process. (Tr. 25, 481.) He generally refused to perform mental status examination tasks, his cooperation on the WAIS-IV was poor, and he was found to be exaggerating his symptoms. (Tr. 25, 484-86.) In July 2012, Dr. Burdge told plaintiff that he "did not have a major mental illness" and posited that plaintiff's instability "may be more characterologic in nature." (Tr. 590.) He noted plaintiff "made a number of vague claims, usually in the form of brief and vague responses, and when prompted to elaborate, he was repeatedly unable to provide relevant support." (Tr. 590.) He questioned plaintiff's veracity and noted behavioral observations were inconsistent with a severe mental illness. (Tr. 590.) Dr. Burdge found plaintiff did not appear to put forth adequate effort during the process and indicated a "rule out" malingering diagnosis. (Tr. 591, 593.) This evidence supports the ALJ's conclusion that plaintiff exaggerated his limitations and supports a clear and convincing reason for rejecting plaintiff's testimony.

Second, the ALJ determined the medical record shows plaintiff is capable. (Tr. 25.) Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). The ALJ pointed out an April 2011 Cooperative Disability Investigations Unit (CDIU) report of an investigation conducted by Detective Fenton[9] noted plaintiff had friends, was social despite his problems in school, and lived independently. (Tr.

---

[9]The investigation was initiated after Disability Determination Services (DDS) found inconsistencies between plaintiff's allegations and his presentation throughout the disability file. (Tr. 253.)

25, 253.) A special education evaluation in February 2012 indicated plaintiff was easily distracted at times and had difficulty with organization and sustained concentration. (Tr. 25, 554.) However, the ALJ pointed out the evaluation indicated plaintiff had closed the achievement gap in reading comprehension and math reasoning. (Tr. 25, 555.) His behavior was noted to be appropriate while attending the alternative school, although historically he had demonstrated disruptive, insubordinate and threatening behaviors leading to disciplinary action. (Tr. 25, 556.) In July 2012, he presented to his treating medical provider as psychologically and socially appropriate. (Tr. 25, 566.) An October 2012 school individualized education program form noted he attended school every day, has good verbal skills, is good at negotiation, and does well with hands on jobs. (Tr. 25, 568.) In December 2012, plaintiff saw Dr. Burdge who observed normal speech, normal motor activity and normal mood. (Tr. 25, 593.)

Plaintiff argues the ALJ "misunderstands" the evidence regarding plaintiff's educational progress. (ECF No. 12 at 17-18.) Plaintiff points out that although his teacher noted he had closed the achievement gap in reading comprehension and math, she also noted the gap widened in basic reading skills, math calculation, and writing. (Tr. 555.) Even if this could reasonably characterized as a misstatement of the evidence, and the court does not conclude that it is, the report also indicates that "some caution must be used in making this comparison as current academic scores are from an abbreviated battery and Timothy did not persist with writing tasks as he may have in the past." (Tr. 555.) As such, this is a minor point in the ALJ's description of evidence which demonstrates that plaintiff is capable of performing and improving at school.

Plaintiff also argues that school accommodations due to his educational disability are equivalent to a sheltered work environment. (ECF No. 12 at 18-19.) Plaintiff asserts the evidence indicates plaintiff "cannot control his temper or stay on task even in that environment." (ECF No.

12 at 19.) To the contrary, the evidence cited by the ALJ reasonably supports the finding that plaintiff is capable of performing tasks and social skills within the limitations of the RFC finding. Other evidence cited by the ALJ throughout the decision and discussed herein supports this conclusion.

Third, the ALJ concluded plaintiff's activities are consistent with the residual functional capacity finding. (Tr. 25.) Evidence about daily activities is properly considered in making a credibility determination. *Fair*, 885 F.2d at 603. The ALJ pointed out that plaintiff's mother reported plaintiff typically watches television, plays games, and visits with friends. (Tr. 25, 238.) She indicated plaintiff is able to clean, do laundry, and mow the lawn. (Tr. 239.) The ALJ also noted plaintiff reported to Dr. Toews in January 2011 that he could live independently, prepare simple meals, do light housework, shop, and is able to interact with others. (Tr. 25-26, 483.) The ALJ found this evidence reflects a level of functioning not consistent with plaintiff's claims of disability and indicates that plaintiff's capabilities are consistent with the RFC. (Tr. 25.)

Plaintiff argues he did not claim to be unable to do the activities cited by the ALJ and those activities are not related to his impairments. (ECF No. 12 at 16.) To some extent, plaintiff is correct that the ability to participate in such activities is not part of plaintiff's complaints. On the other hand, plaintiff's ability to socialize and interact with people is inconsistent with the implication that he cannot get along with anyone in a job situation. However, giving plaintiff the benefit of the doubt, the court concludes this reason is not so well-supported by the ALJ's citations to the evidence to constitute substantial evidence supporting a convincing reason to find plaintiff not credible. Notwithstanding, the ALJ cited other specific, clear and convincing reasons which justify

the credibility finding and therefore this is harmless error. *See Carmickle*, 533 F.3d at 1162; *Stout*, 454 F.3d at 1055; *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).[10]

Fourth, the ALJ found plaintiff's noncompliance with medication and treatment recommendations reduced his credibility. (Tr. 26.) It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113 -1114; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair*, 885 F.2d at 603-604. An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ pointed out that plaintiff told Detective Fenton during the CDIU interview that he had stopped taking his medication and he

---

[10]Relying on the dissent, plaintiff argues, "*Carmickle* demonstrates that when the ALJ commits a single credibility error the general rule is to remand; that to consider the error harmless is an exception to the general rule and should be done when there is only a 'minor error' and there are numerous well supported remaining reasons given by the ALJ." (ECF No. 15 at 6-7, *citing* 533 F.3d at 1168.) The majority in *Carmickle* addressed the dissent and observed, "Contrary to the dissent's assertion, the relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, *see* Dissent at 1168, it is whether the ALJ's decision remains legally valid, despite such error." 533 F.3d at 1162. The ALJ cited several other specific, clear and convincing reasons supported by substantial evidence which reasonably validate the credibility finding. As a result, to the extent the ALJ's discussion of plaintiff's daily activities was error, it is harmless.

preferred to smoke marijuana. (Tr. 26, 265.) Plaintiff wrote on a function report form dated December 2011 that he does not take medication. (Tr. 26, 292.) Dr. Toews noted in February 2011 plaintiff was reported to be improved with medication at school and home in 2010, but decided to quit taking medication at some point. (Tr. 26, 486.) Dr. Toews opined that plaintiff's noncompliance with medication exacerbates symptoms and affects functional abilities. (Tr. 486.) Additionally, Dr. Toews concluded that it is likely plaintiff would be able to perform repetitive types of work tasks if he was compliant with treatment. (Tr. 486.) Plaintiff told Dr. Burdge in December 2012 that he has had treatment off and on for various conditions. (Tr. 589.) The evidence reasonably supports the conclusion that plaintiff is noncompliant with treatment. This is a clear and convincing reason supported by substantial evidence which supports the credibility determination.

Plaintiff argues that his failure to be compliant with treatment is a symptom of his mental health condition. (ECF No. 12 at 19-20.) Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-1114. Here, substantial evidence suggests compliance with treatment will improve plaintiff's symptoms. There is no evidence indicating that plaintiff is not capable of taking medication or that his failure to maintain treatment is based on anything other than plaintiff's preference. Even if some evidence did suggest plaintiff's failure to comply with treatment is a symptom of his mental health issues (and the court does not find that it

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

does), other evidence exists which reasonably suggests that plaintiff chooses not comply with or pursue treatment because of personal preference. As a result, the ALJ did not err in considering failure to comply with treatment as a factor in the credibility determination.

Lastly, the ALJ noted plaintiff consistently reported his future plans do not include work and he does not want to work. (Tr. 26.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen*, 80 F.3d at 1284. The ALJ pointed out plaintiff repeatedly told Dr. Toews he does not want to work and has no intention of working. (Tr. 26, 481.) Dr. Toews reported, "He frankly stated he has no problems preventing him from working." (Tr. 481.) When Dr. Burdge asked if he wanted to work, plaintiff said, "No, not really." (Tr. 589.) The ALJ observed disability benefits are intended for people who are unable to work, not for people who do not want to work. (Tr. 26.) Plaintiff argues a lack of motivation to work is a symptom of plaintiff's condition and should not be held against him. (ECF No. 12 at 19.) None of the opinion evidence suggests that plaintiff's declaration that he does not intend or want to work is a limitation based on his mental health condition, nor does any opinion identify a lack of motivation as a symptom caused by his mental health issues. As a result, this is also a clear and convincing reason supported by substantial for rejecting plaintiff's testimony.

**3.    Lay Witness**

Plaintiff argues the ALJ erred in evaluating the lay witness evidence. (ECF No. 12 at 11-15.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ

"'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

### a.    Cynthia Crawford

Plaintiff argues that although the ALJ assigned "great weight" to the opinion of Cynthia Crawford, a special education teacher, the ALJ failed to accurately describe her statements and observations. (ECF No. 12 at 11-13.) Ms. Crawford signed a special education reevaluation report dated February 23, 2012.[11] (Tr. 553-560.) The 2012 evaluation report indicated plaintiff was currently expelled from school but still received weekly services from the alternative high school. (Tr. 553.) He was not on track for graduating on time. (Tr. 553.) The report noted eight discipline incidents in high school related to insubordination, disruptive conduct, bullying, and intimidating a public servant. (TR. 553.) The report found, "Timothy's insubordinate and bullying behaviors are not related to his health impairment, as these behaviors are associated with oppositional and defiant behaviors."[12] (Tr. 553.)

---

[11]Additionally, the report was signed by plaintiff, the school psychologist, and a school district representative. (Tr. 560.) The record also contains a Social Security Administration teacher questionnaire form for evaluation of a minor child completed by Ms. Crawford in November 2010, before the alleged onset date for the claim that is the subject of this action. (Tr. 183-90.)

[12] "Health impairment" is a category of qualification for special education services. (Tr. 553, 558.) Plaintiff originally qualified for special education based on a specific learning disability in reading, writing and math. (Tr. 191.) In 2006, the disability category was changed to health impaired based on his diagnosis of ADHD. (Tr. 191.) The 2012 report notes that ODD is not an educational disability. (Tr. 556.)

The report found plaintiff to be friendly and cooperative during testing; he appeared easily distracted at times; and he had difficulty with sustained concentration on tasks. (Tr. 554.) Testing revealed plaintiff continued to demonstrate significant delays in reading comprehension, math, and writing and his skills fell well below age and grade level expectations. (Tr. 555.) However, plaintiff had closed the achievement gap in reading comprehension and math reasoning, although the gap increased in basic reading skills, math calculation and writing. (Tr. 555.) The report indicated "some caution must be used in making this comparison as current academic scores are from an abbreviated battery and Timothy did not persist with writing tasks as he may have in the past." (Tr. 555.) Plaintiff reported being unable to identify any vocational interest and not taking medication for several years. (Tr. 556.)

In October 2012, Ms. Crawford signed an individualized education program (IEP) form. (Tr. 568-81.) The IEP listed numerous strengths, including normal verbal skills. (Tr. 568.) It was noted that plaintiff "is well able to hold, keep a job and live independently with some assistance." (Tr. 568.) The IEP indicated that plaintiff knows the consequences of his actions, but sometimes chooses to do the action anyway. (Tr. 569.) "He has behavioral issues that prevent him from producing larger amounts of work." (Tr. 569.) He was able to function in a class with a small number of people, but he was easily distracted. (Tr. 569.) He again reported not taking his medication. (Tr. 569.)

As part of the April 2011 CDIU investigation, Detective Fenton interviewed Ms. Crawford. (Tr. 260-62.) She reported several instances of threatening or intimidating behavior by plaintiff. (Tr. 260-62.) She stated that after 28 years of teaching, plaintiff "was the first kid, she can honestly say, someone needs to do something or another Columbine is going [to] happen." (Tr. 261.) She also told the detective that when plaintiff was medicated for ADHD, it brought him down from his

heightened experience. (Tr. 261.) Ms. Crawford reported plaintiff did not take his medication but self-medicated with marijuana. (Tr. 261.)

The ALJ gave great weight to Ms. Crawford's opinion. (Tr. 26-27.) The ALJ pointed out that Ms. Crawford opined that plaintiff could hold a job and live independently. (Tr. 26, 568.) The ALJ noted Ms. Crawford was able to observe plaintiff in the stressful environment of school and found her opinion to be consistent with other evidence in the record. (Tr. 27.) The ALJ noted plaintiff's participation in special education due to ADHD and the difficulties with concentration and organization identified by Ms. Crawford. (Tr. 23, 25.) The ALJ pointed out that plaintiff was able to close some of the achievement gaps caused by his ADHD, as noted in the February 2012 report by Ms. Crawford. (Tr. 23, 25.) The ALJ observed that plaintiff's behavior at school was appropriate in February 2012, and plaintiff had good verbal skills, was good at negotiation, and did well with his hands in October 2012. (Tr. 25.) The ALJ cited Ms. Crawford's report that plaintiff had been expelled from school in assessing his social functioning. (Tr. 23.)

Plaintiff argues the ALJ "cherry-picked" Ms. Crawford's statement that plaintiff was able to keep a job and that her other statements are inconsistent with the residual functional capacity finding. (ECF No. 12 at 12.) However, the ALJ considered other factors mentioned by Ms. Crawford throughout the decision. (Tr. 23-28.) Indeed, her statements regarding concentration and social skills are consistent with limitations in the RFC to simple tasks (see discussion *infra*), no work in close coordination with coworkers, and only occasional interaction in the public. (Tr. 24.)

Plaintiff suggests that Ms. Crawford's comments regarding plaintiff's threatening and violent behavior and her statement that plaintiff could cause "another Columbine" were overlooked by the ALJ in formulating the RFC. (ECF No. 12 at 12.) However, the other psychological opinions in the record support the ALJ's interpretation of Ms. Crawford's various

statements. Dr. Burdge found plaintiff "did not have a major mental illness" and his instability "may be more characterologic." (Tr. 590.) Dr. Toews, who experienced plaintiff's "immature, petulant, manipulative, verbally aggressive and threatening" behavior firsthand, indicated noncompliance with treatment exacerbates his symptoms and affects his functional abilities. (Tr. 486.) Dr. Kraft, who reviewed the entire record, found plaintiff can complete tasks in a productive manner when on medication and that when motivated, plaintiff can be socially appropriate. (Tr. 517.) As noted by the ALJ, Ms. Crawford's statements are consistent with these findings. (Tr. 27.) It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's interpretation of the evidence was reasonable in light of other evidence in the record. As a result, there is no error with respect to Ms. Crawford's statements.

### b.   Carnie Beavers

Plaintiff argues the ALJ erred by failing to discuss the testimony of plaintiff's grandmother, Carnie Beavers. (ECF No. 12 at 13-15, Tr. 56-66.) "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout,* 454 F.3d at 1053; *see also* 20 C.F.R. §§ 404.1513(d). Such testimony is competent evidence and "*cannot* be disregarded without comment." *Nguyen,* 100 F.3d at 1467. Disregard of other source opinions violates the Secretary's regulation observations by non-medical sources will be considered regarding how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e). However, although the regulations require consideration of other source opinions, *see* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), the ALJ is not required to provide express reasons for rejecting testimony from each lay witness. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

Cir. 2012). If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness. *Id.* Here, the ALJ discussed a written statement from plaintiff's mother (Tr. 25-26.) but failed to mention the testimony of his grandmother. Based on the foregoing, this is clear error.

Defendant argues that the failure to analyze this evidence did not affect the outcome of the case and that the error was harmless. (ECF No. 14 at 18.) Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout*, 454 F.3d at 1056. Similarly, an ALJ's failure to discuss lay witness evidence may be harmless error if the lay witness statement refers to limitations addressed by the RFC. *See Rounds*, 807 F.3d at 1007. Plaintiff argues the error is not harmless because Ms. Beavers' testimony is not consistent with the RFC and she offered insight into plaintiff's behavior and his outbursts of anger. (ECF No. 12 at 15, ECF No. 15 at 4.)

Ms. Beavers testimony discussed plaintiff's upbringing and his living situation. (Tr. 52-57.) Her testimony also included statements such as, "I try not to talk to him . . . because he gets mad at me. . . . [W]e just don't get along at all" (Tr. 53); "He would complain about everything. He doesn't like to share anything. He doesn't like anybody doing anything with anything." (Tr. 55); "He gets angry at you for nothing. And he doesn't know the meaning of right from wrong . . . he doesn't, doesn't comprehend it." (Tr. 57.) When asked if she was afraid of plaintiff, Ms. Beavers said, "Yeah, in a way I am, because he gets mad and he'll take his fist and slam it into a table or something." (Tr. 59.) She also testified, "He gets mad easy. He needs to go into counseling. He needs to get some medication or something to help him chill out. Because it scares me." (Tr.

59.) Regarding Ms. Crawford's Columbine comment, Ms. Beavers testified, "It's mostly verbal threats. I don't think he would go that far [a Columbine incident]. But he wants people think he's big, tough, and that he can do all this stuff." (Tr. 60.) She also testified she was afraid to tell him "no" and that "He'll blow up at you and he changes, real fast." (Tr. 60, 64.)

Defendant argues Ms. Beavers' testimony contained no specific functional limitations. (ECF No. 14 at 18.) Plaintiff argues plaintiff's interactions with his grandmother "are indicative of his general attitude toward authority" and "clearly contradicts" the RFC finding that plaintiff "can respond appropriately to supervision." (ECF No. 15 at 4.) The court concludes no reasonable ALJ would change the outcome of this case based on consideration of Ms. Beavers' testimony. The testimony discusses traits and actions mentioned in other evidence credited by the ALJ. Notably, the interview with Dr. Toews was a demonstration of similar behavior. (Tr. 481-87.) The CDIU investigation report and the school records also mentioned similar behaviors. (Tr. 253-67, 553-60, 568-81.) The ALJ gave great weight to the opinion of Dr. Burdge, who told plaintiff he did not have a major mental illness and indicated plaintiff's issues "may be more characterologic." (Tr. 590.) Dr. Kraft also opined that plaintiff can behave appropriately when motivated. (Tr. 517.) Given the weight of the medical evidence and the occurrence of similar evidence elsewhere in the record, the court concludes no reasonable ALJ would arrive at a different outcome in this case, even if Ms. Beavers' testimony were credited. As a result, the ALJ's error in failing to discuss Ms. Beavers' testimony is harmless error.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**4.    RFC**

Plaintiff argues the residual functional capacity finding is inconsistent with the opinion of Dr. Kraft. (ECF No. 12 at 9-10.) A claimant's "residual functional capacity" is what a claimant can still do despite any limitations. 20 C.F.R. §§ 404.1545(a); 416.945(a). Dr. Kraft reviewed the record and completed a mental residual functional capacity assessment in January 2011. (Tr. 515-18.) She assessed six moderate limitations. (Tr. 515-16.) Dr. Kraft's narrative functional capacity assessment provides:

> Clmt is capable of understanding, remembering and following through with simple and some complex instructions. Intermittent disruption of CPP [concentration, persistence and pace] is expected d/t [due to] attentional and personality issues. Clmt can complete tasks in a productive manner when on medications for ADHD and BAD. Best away from the GP [general public]. When motivated able to be socially appropriate. Would benefit from clear and non-confrontative supervision. Can manage superficial interactions with other[s] in the work place. No adaptive limits noted.

(Tr. 517.) The ALJ gave "great weight" to Dr. Kraft's opinion. (Tr. 26.)

Plaintiff first argues the RFC finding fails to take into account Dr. Kraft's opinion that plaintiff experiences intermittent disruption of concentration, persistence and pace. (ECF No. 12 at 9.) Dr. Kraft opined that plaintiff is capable of understanding, remembering and following through with simple and some complex instructions, but "intermittent disruption of CPP is expected d/t [due to] attentional and personality issues." (Tr. 517.) The RFC finding provides, "The claimant can understand, remember, and carry out simple instructions required of jobs classified at a level of SVP 1 and 2 or unskilled work. He can make judgments on simple, work-

related decisions."[13] An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). In *Stubbs*, the court found the ALJ reasonably translated evidence of claimant's "slow pace in both thinking and actions" and a moderate limitation in the ability "to perform at a consistent pace without an unreasonable number and length of rest periods" to a concrete RFC limitation to "simple tasks." *Id.* at 1173-74. Furthermore, Dr. Kraft's opinion that plaintiff will experience intermittent disruption of concentration, persistence and pace is qualified by Dr. Kraft's statement that plaintiff can complete tasks in a productive manner when on medication. (Tr. 517.) This suggests that any limitation on concentration, persistence and pace would be reduced if plaintiff were compliant with medication. As a result, there was no error regarding concentration, persistence and pace in the RFC.

Plaintiff also argues the RFC finding deviates from Dr. Kraft's opinion that plaintiff would benefit from clear and non-confrontational supervision. (ECF No. 12 at 9.) The RFC finding states plaintiff "can respond appropriately to supervision but should not be required to work in close coordination with co-workers such as in a large, restaurant kitchen." (Tr. 24.) An ALJ does not err

---

[13]Specific Vocational Preparation (SVP) is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DICTIONARY OF OCCUPATIONAL TITLES App. C § II (4th ed. 1991). "Unskilled work" is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §§ 404.1568, 416.968.

by failing to include a physician's recommendations, as opposed to functional limitations, in the RFC assessment. *See Carmickle,* 533 F.3d at 1165 (finding the ALJ did not err in failing to address a physician's recommendation that a plaintiff use a reclinable desk chair while working, because it was not stated as an imperative). The plain language of Dr. Kraft's statement that plaintiff "would benefit from" nonconfrontational supervision indicates a recommendation rather than a limitation.[14] As a result, the ALJ did not err by not including this limitation in the RFC.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment **(ECF No. 14)** is **GRANTED.**

2.      Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED March 31, 2016

*s/ Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge

---

[14] Plaintiff argues this is a *post hoc* rationalization and an attempt to "intuit what the ALJ may have been thinking." (ECF No. 15 at 5.) To the contrary, this is a permissible conclusion under *Carmickle*.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27